| ¿THOMAS W. TANNER, Judge Pro Tem.
In this worker’s compensation case, the hearing officer found that the plaintiff, Do-rain [2] B. Alexander, failed to prove an entitlement to worker’s compensation following an injury to his back while in the course and scope of his employment with the defendant, Associated Grocers, Inc. (AG). The plaintiffs suit was dismissed with prejudice, and he appeals. The salient issue in this appeal is whether the hearing officer erred in finding that the plaintiff was released to return to work, and thereby not entitled to further worker’s compensation benefits as of March 27, 1991.
Background Facts
On January 27, 1991, Dorain B. Alexander injured his back while lifting a case of groceries in the warehouse of his employer, AG. AG immediately paid Alexander temporary total disability benefits from the date of injury, January 27, 1991, through March 27, 1991, excepting a three week period during which the plaintiff was able to perform light duty work, and he received supplemental earnings benefits (SEB’s) instead of temporary total benefits during this three week period. AG discontinued the benefits after March 27, 1991 on the basis that Alexander’s treating physicians had released him to return to work. On appeal, Mr. Alexander asserts that the medical evidence was inconclusive regarding the severity of his injury and the duration of disability, and therefore, the trial court erred in dismissing his claim. Our review of the record reveals that plaintiffs claims are baseless; there is sufficient evidence to support the trial court’s finding that Mr. Alexander was released and able to return to work as of March 27, 1991. Accordingly, we affirm.
Analysis
On the day following the injury, Mr. Alexander went to LA Med and was seen by Dr. Joseph Bonck. Dr. Bonck diagnosed a lumbar strain/contusion, released Alexander to return to work immediately, Lon restricted duty, and referred Mr. Alexander to Dr. Samuel Irwin, an orthopaedic surgeon, whom Mr. Alexander saw that same afternoon. Dr. Irwin noted that Alexander was in apparent lower back distress and was complaining of pain; however, a neurologic examination and x-rays were both normal. Dr. Irwin also diagnosed a lumbar strain/contusion, ordered bedrest, ice and heat for 48 hours, and released Alexander to return to work on January 30, 1991. Alexander returned to Dr. Bonck on February 1, 1991, and to Dr. Irwin on February 8, 1991 with continuing complaints of back pain. Dr. Irwin sent Alexander to a work hardening program, which Alexander attended from February through March 14, 1991. The work hardening program discharge summary stated that Alexander was currently functioning at a “heavy level” of work, the same as was required at his job with AG. Dr. Irwin also ordered a CT scan which was performed on March 20, 1991. The CT scan showed some bulging (which Dr. Irwin attributed to congenital abnormalities in the lower back), but no evidence of a herniated disc or injury attributable to the January 27,1991 incident. Again, despite Mr. Alexander’s continued complaints of pain, Dr. Irwin ordered Mr. Alexander released back to work, and suggested that Mr. Alexander would have to learn to live with the pain.
According to Mr. Alexander, he attempted to return to work on March 27, 1991; however, he claimed that he was told to sign a form which stated that he was able to return to work. As he was unable to perform his duties free of pain, Alexander refused to sign the form and was told to go home. Nevertheless, since he had been released to return to work, his worker’s compensation benefits were discontinued as of March 27, 1991.
In April, 1991, Alexander went to his choice of physician, Dr. Jerry Williams, an *605 internal medicine specialist. Dr. Williams diagnosed a cervical spine strain and advised Alexander to avoid strenuous activities and heavy lifting, and excused Alexander from work “until further notice.” In June, 1991, Dr. Williams noted that although Alexander was still experiencing pain, he was somewhat improved, although he was still disabled and the extent of |4disability undetermined.
Because of the conflicting opinions of Dr. Irwin and Dr. Williams, AG requested and was granted an independent medical examination of Alexander by Dr. Thad Broussard, on March 4, 1992. Dr. Broussard reviewed the prior CT scan and found abnormalities at L3-4, L4-5 and L5-S1. Dr. Broussard recommended that further imaging studies be performed to determine if Alexander was stable and could return to work. However, before Dr. Broussard was able to continue with his examination of Alexander, it was discovered that Dr. Broussard was currently treating Mr. Alexander’s father, and Mr. Alexander himself was a former patient of Dr. Broussard. Because of this prior relationship, the trial court ordered another independent medical examination of Mr. Alexander with Dr. Alan Farries, Jr.
Dr. Farries saw Mr. Alexander on June 17, 1992. He reviewed the prior CT scan and noted the bulging disc; however, he opined that this condition was nonpathologic and unrelated to the January 27, 1991, incident. In Dr. Farries’ opinion, Alexander probably initially suffered a lumbosacral strain at the time of the incident, but such injury had long been healed and Mr. Alexander should be able to return to work with no restrictions.
The record is clear. Only one physician, an internal medicine specialist, was of the opinion that the injury suffered by Mr. Alexander on January 27, 1991 rendered him disabled after March 28, 1991. All of the other evidence indicates that, at most, Mr. Alexander suffered a lower back strain which partially disabled him from working from the date of injury until approximately March 28, 1991, when he was released from the work hardening program. Based on this record, the trial court determined that Mr. Alexander was not disabled, and therefore, not entitled to benefits after March 28, 1991. We find this conclusion more than amply supported by the record; in any event, there is no manifest error. Accordingly, the judgment of the trial court, dismissing plaintiffs action, is affirmed. Costs of this appeal are assessed to Mr. Alexander.
AFFIRMED.

. The plaintiff's name is referred to as “Dorian” throughout the record; however, the disputed claim for compensation (the 1008 form) reflects plaintiff's name is "Dorain.”